# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Nº 12-CV-2756 (JFB)(WDW)

FRANK FRASCO ET AL.,

Plaintiffs,

VERSUS

MASTIC BEACH PROPERTY OWNERS' ASSOCIATION ET AL.,

Defendants.

**MEMORANDUM AND ORDER**
July 29, 2014

JOSEPH F. BIANCO, District Judge:

Plaintiffs Frank Frasco ("Frasco"), Frank Fugarino ("F. Fugarino"), Donna Boble ("Boble"), Paul Breschard ("Breschard"), Nicholas Busa ("Busa"), Anthony D'Amico ("D'Amico"), Clement Dewitt ("Dewitt"), Jasper Fugarino ("J. Fugarino"), Samuel Pletenik ("Pletenik"), Glen Svoboda ("Svoboda"), Maurice Simon ("Simon"), Ron Snyder ("Snyder"), Theresa Stasky ("Stasky"), and Victor Zeleny ("Zeleny") (collectively, "plaintiffs") bring this action against defendants Mastic Beach Property Owners' Association ("MBPOA"), Gerald Ludwig ("Ludwig"), Lynne DeBona ("DeBona"), John Pastore ("Pastore"), Kevin Collins ("Collins") and Maura Spery ("Spery") (collectively, "defendants"). Plaintiffs allege that defendants engaged in a conspiracy, in violation of 42 U.S.C. § 1985(3), when they denied plaintiffs renewed membership in the MBPOA in 2011 in retaliation for their support of the formation of the Village of Mastic Beach.[1]

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the following grounds: (1) defendants are legally incapable of conspiring together, plaintiffs do not qualify for class-based recognition under the statute, and plaintiffs have suffered no constitutional injury actionable under § 1985(3); (2) New York's Business Judgment Rule bars judicial review of the reasonableness of the MBPOA's action, because the Board of Directors acted within its authority and for a legitimate purpose; (3) Busa never requested a membership renewal; and (4) the record is devoid of any evidence that Ludwig and Spery voted to not renew the MBPOA

---

[1] Plaintiffs withdrew their state law claims against defendants by letter dated July 12, 2012. In addition, in their opposition to summary judgment, plaintiffs withdraw their claims against Robert DeBona, who passed away on October 14, 2012. (Opp'n, at 1.) Accordingly, the claims against Robert DeBona are dismissed with prejudice.

memberships. Plaintiffs oppose, arguing that defendants acted without authority, plaintiffs are members of a protected class and suffered a cognizable injury, and there are disputed facts with respect to Busa's decision not to renew his membership and Ludwig's and Spery's conduct. Plaintiffs also cross-move for sanctions, seeking an adverse jury instruction for the first three elements of the 42 U.S.C. § 1985(3) claim, as well as punitive damages, stemming from the existence of differing versions of relevant MBPOA's membership lists and minutes of MBPOA Board meetings. Defendants oppose, arguing, *inter alia*, that plaintiffs have received all of the information and documentation requested. For the reasons set forth herein, the Court grants summary judgment to defendants. Specifically, the Court holds that plaintiffs are not members of a protected class and have not suffered a cognizable constitutional injury. The Court therefore does not address the parties' other arguments, and it denies plaintiffs' spoliation motion as moot.

I. BACKGROUND

A. Factual Background

The Court takes the following facts from the parties' affidavits, depositions, exhibits, and Rule 56.1 Statements of Fact. The Court construes the facts in the light most favorable to the nonmoving parties. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). The Rule 56.1 statements contain specific citations to the record, and the Court generally cites to the statements rather than to the record. Unless otherwise noted, where a Rule 56.1 statement is cited, that fact is undisputed or the opposing party has not pointed to any contradictory evidence in the record.

1. The MBPOA

MBPOA is a private, nonprofit corporation. (Defs.' 56.1 ¶ 1.) At the time of the incidents at issue—2010 through 2011—the individual defendants were members of the Board of Directors of the MBPOA. (*Id.* ¶ 2.) Plaintiffs were members of the MBPOA in 2010, and many were members for years prior to 2010. (Pls.' 56.1 ¶ 12.) Each and every plaintiff either assisted in forming, or later joined, the Pattersquash Creek Civil Association, which lobbied and fundraised for the (since successful[2]) incorporation of the Village of Mastic Beach. (*Id.* ¶ 4.)

Article 1, Section 4 of the MBPOA Constitution and By-Laws limits membership in the MBPOA to "owners of real property in Mastic Beach, Postal Zone 11951." (MBPOA Constitution and By-Laws, Pls.' Ex. 1, at 2.) To be a "member in good standing," an individual "must not be delinquent in paying annual dues," and must abide by the MBPOA's objectives:

> The promulgation of acquaintance, good will, protection of its interest and to the interest of its members;
> To encourage and promote action by the property owners and residents of Mastic Beach in the improvement and general welfare of the community;
> To promote, maintain, foster interest and participation in the civic affairs of our community;
> To promote and preserve harmony, cooperation and communication among all Members; and

---

[2] *See About Mastic Beach Village*, The Village of Mastic Beach New York, http://www.masticbeachvillageny.gov/village-info/about-us (last visited July 29, 2014) (stating that Village of Mastic Beach was incorporated in 2010).

> To promote activities for the social entertainment and recreation of its members.

(*Id.* at 1, 18.)

No provision specifically ascribes (or proscribes) to the Board of Directors authority to renew or cancel MBPOA memberships.[3] Article II, Section 6 provides, *inter alia*:

> It shall be the duty of the Board of Directors to protect the property of the Association. . . . They shall conduct and transact the business and financial affairs of the Association, develop the plan of work and budget, raise, spend and account for the Association's funds and manage its properties, build community understanding and support, provide sound democratic organization, seek advice from members on matters pertaining to broad plans, policies and general direction not conflicting with the Constitution and By-laws. . . . [T]he sole authority for making amendments [to the Constitution and By-laws] rest[s] with the membership. . . .

(*Id.* at 6–7.)

The MBPOA possesses certain properties, including approximately 6.5 miles of waterfront. (Defs.' 56.1 ¶ 5.) As relevant here, pursuant to a deed conveyed to the MBPOA in 1940: "Upon the formation of an incorporated village of Mastic Beach, the grantee Association agrees that it will convey or dedicate without consideration to the said Village, such part of the within described limits as may be included within the described corporate limits of such Village." (*Id.*)

2. The Underlying Dispute

Plaintiffs contend that they each met the conditions of eligibility for membership in the MBPOA in 2011, but were denied renewal without explanation.[4] (*Id.* ¶ 13; *see* Rejected Applications, Pls.' Ex. 2.) Specifically, they believe defendants did not renew the memberships in retaliation for plaintiffs' opposition and attempts to stop allegedly unethical and unauthorized activities, including the use of MBPOA funds by the Board to finance a campaign against the formation of the Village of Mastic Beach without first conducting open discussions in general membership meetings and without reports to the general membership regarding the use of the funds.[5] (*See* Pls.' 56.1 ¶¶ 13–14; Opp'n, at 1–2.) For instance, Fugarino and D'Amico, as plaintiffs in the Supreme Court of the State of New York, County of Suffolk, sought to enjoin the MBPOA from providing financial support to the opposition of the Mastic Beach Village incorporation without first obtaining the approval of MBPOA members. (*See* Pls.' 56.1 ¶ 8.) Busa, meanwhile, testified that Robert DeBona told Busa that he and his wife were "undesirables" and not welcome as MBPOA members, which led to Busa's decision not to renew his membership. (*Id.* ¶ 10.)

Defendants, on the other hand, claim the nonrenewals were justified because (1) the

---

[3] According to Article II, Section 4, the Financial Secretary (also a member of the Board) must collect all monies due the MBPOA, keep an accurate record thereof, and keep an accurate list of all members. (MBPOA Constitution and By-Laws, at 4.)

[4] In fact, on June 30, 2011, MBPOA published and distributed a "NOTICE" stating that plaintiffs are not allowed to use MBPOA facilities under any circumstances. (Pls.' 56.1 ¶ 15.)

[5] Plaintiffs believe that they "acted in furtherance of the stated objectives of the MBPOA." (Opp'n, at 5.)

3

Board must "protect the property of the Association" (Defs.' 56.1 ¶ 6), which was being threatened by the potential incorporation of the Village of Mastic Beach; (2) certain individuals were intoxicated and/or became highly disruptive at general membership meetings, causing the police to be called (*id.* ¶ 7); (3) some of the plaintiffs obtained a restraining order preventing individual MBPOA Board members from spending their own personal funds to oppose the Village's formation (*id.* ¶ 8); and (4) Busa did not submit any membership renewal application or accompanying fees by or on behalf of himself for 2011, and MBPOA thus never received nor rejected any application from him (*id.* ¶ 9). Defendants also contend that Spery and Ludwig were not present at Board meetings when the Board voted not to renew certain individuals' membership. (*Id.* ¶ 10.)

### B. Procedural Background

Plaintiffs commenced this action on June 1, 2012, and filed an amended complaint on June 13, 2012. Plaintiffs withdrew their state law claims on July 12, 2012, and defendants answered the amended complaint on August 3, 2012. Defendants moved for summary judgment on March 14, 2014. Plaintiffs opposed summary judgment and filed their motion for spoliation sanctions on May 25, 2014. Defendants filed their reply in support of their motion for summary judgment and their opposition to spoliation sanctions on June 30, 2014. Plaintiffs filed their reply in support of spoliation sanctions on July 11, 2014. The Court held oral argument on July 28, 2014. The matter is fully submitted.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). As the Supreme Court

stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

III.   DISCUSSION

Defendants raise several challenges to the 42 U.S.C. § 1985(3) civil conspiracy claim. They argue, *inter alia*, that summary judgment is warranted because plaintiffs are not members of a protected class and have not suffered any cognizable constitutional injury. Plaintiffs counter that they qualify for protection because they are part of an organized group that challenged the Board in furtherance of the objectives of the MBPOA and not for their own economic or commercial interests. They also argue that they suffered actionable injuries because defendants denied plaintiffs their fundamental right to contract and the right to use and enjoy waterfront property (including access to waterways), in violation of the Fourteenth Amendment.

Section 1985(3) prohibits two or more persons from conspiring for the purpose of depriving any person of the equal protection of the laws or of equal privileges and immunities under the laws. 42 U.S.C. § 1985(3). To establish a claim under § 1985(3), a plaintiff must establish (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Hollman v. Cnty. of Suffolk*, No. 06-CV-3589 (JFB)(ARL), 2011 WL 280927, at *11 (E.D.N.Y. Jan. 27, 2011) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)); *see Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citing *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586–87 (2d Cir. 1988)).[6] Further, in order to reach a purely private conspiracy under § 1985(3), such as the one alleged here, "a plaintiff must show, *inter alia*, (1) that some racial, or perhaps otherwise class-based,

---

[6] A conspiracy "'need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct.'" *Roach*, 165 F.3d at 146 (quoting *LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995)). It must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Mian*, 7 F.3d at 1088). And the plaintiff must show "with at least some degree of particularity, overt acts which the defendants engaged in which were reasonable related to the promotion of the claimed conspiracy," *Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 133 (E.D.N.Y. 2010) (quoting *Thomas*, 165 F.3d at 146), and "some predicate constitutional right which the alleged conspiracy violates," *Friends of Falun Gong v. Pac. Cultural Enter., Inc.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003).

invidiously discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (internal quotation marks and citations omitted); *see Poles v. Brooklyn Cmty. Hous. & Servs.*, No. 10 Civ. 1733 (BMC)(LB), 2010 WL 1992544, at *2 (E.D.N.Y. May 14, 2010).

Plaintiffs' claim fails under both prongs.

First, as a matter of law, plaintiffs are not members of a protected class. "Although it is unclear whether under Second Circuit law a political party is a protected group satisfying §1985's class-based discrimination requirement,"[7] *Fotopolous v. Bd. of Fire Comm'rs of Hicksville Fire Dist.*, No. 11-CV-5532 (MKB), 2014 WL 1315241, at *17 (E.D.N.Y. Mar. 31, 2014), the Second Circuit has held that plaintiffs who claim discrimination because they stand "in political and philosophical opposition to the defendants, and who are, in addition, outspoken in their criticism of the defendants' political and governmental attitudes and activities do not constitute a cognizable class under Section 1985,"[8] *Gleason*, 869 F.2d at 695 (internal alterations, citations, and quotation marks omitted).

In *Gleason*, the plaintiff had run unsuccessfully for mayor, and he claimed that the defendants conspired to and did discriminate against him for political reasons. 869 F.2d at 694. The Second Circuit declined to reconsider *Keating*, because the plaintiff had not claimed discrimination based on his political party affiliation; he had "alleged only that he was discriminated against because he was a political opponent of the defendants and was extremely vocal in his opposition to their management of the Village." *Id.* at 695. Instead, the court adopted the reasoning in *Rodgers v. Tolson*, 682 F.2d 315 (4th Cir. 1978), and concluded that the plaintiff had not shown that he was a "member of a protected class under § 1985." *Gleason*, 869 F.2d at 695; *see also Arteta v. Cnty. of Orange*, 141 F. App'x 3, 8 (2d Cir. 2005) (affirming dismissal of § 1985 conspiracy claim because "a plaintiff who does not claim discrimination based on his political party affiliation but rather contends that he was discriminated against because he was a political opponent of the defendants is not a member of a protected class under § 1985" (citing *Gleason*, 869 F.2d at 694–96)). The court also emphasized that "the intended victims of discrimination must be victims not because of any personal malice the conspirators may have toward them, but because of their membership in or affiliation

---

[7] In *Keating v. Carey*, 706 F.2d 377 (2d Cir. 1983), the Second Circuit held that political parties are protected groups under § 1985(3). *See id.* at 388 (holding that allegations that defendants conspired against plaintiff because he was Republican satisfied class-based discriminatory animus requirement of § 1985(3)). In a case decided after *Keating*, the Supreme Court "suggested that unless the discrimination was based on racial animus, the scope of § 1985 might not extend to include discrimination against political groups." *Fotopolous*, 2014 WL 1315241, at *17 n.9 (citing *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 836–37 (1983)); *see Gleason v. McBride*, 869 F.2d 688, 695 (2d Cir. 1989) (recognizing potential impact of *Carpenters* on *Keating*). Subsequently, other circuits have refused to recognize political parties as protected classes for purposes of § 1985(3). *See, e.g.*, *Grimes v. Smith*, 776 F.2d 1359 (7th Cir. 1985); *Harrison v. KVAT Food Mgmt., Inc.*, 766 F.2d 155 (4th Cir. 1985). The Second Circuit, however, has not overruled *Keating*.

[8] Although the Second Circuit in *Gleason* noted that the plaintiff only claimed he was discriminated against as an individual and had not alleged that others were members of the purported class, *see* 869 F.2d at 695, this Court does not believe that the Second Circuit thus limited its reasoning to claims by individuals rather than by groups.

with a particular class." *Gleason*, 869 F.2d at 695 (quoting *Carpenters*, 463 U.S. at 850 (Blackmun, J., dissenting)); *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993) ("[T]he class 'cannot simply be defined as the group of victims of the tortious action.'" (quoting *Carpenters*, 463 U.S. at 850 (Blackmun, J., dissenting)); *LeBlanc-Sternberg*, 67 F.3d at 427 ("Though the mere fact that 'individuals . . . share a desire to engage in conduct' does not render them a 'class' under § 1985(3), proof that the defendants' impetus was the plaintiffs' religion suffices." (quoting *Bray*, 506 U.S. at 269)).

Here, defendants argue that they are entitled to summary judgment because plaintiffs allege that they were a "political group" that was conspired against (*see* Amended Complaint ¶ 89) and contend that defendants failed to renew plaintiffs' membership in the MBPOA in retaliation for their efforts to incorporate the Village of Mastic Beach, bringing the claim under *Gleason*'s ambit. (*See* Defs.' Mem., at 8). At oral argument, plaintiffs' counsel conceded that the MBPOA is not a "political group." Instead, both in the papers and at oral argument, counsel contends that plaintiffs have a cognizable right based upon the property owners' questioning of the Board's activities and support for incorporation. (*See* Opp'n, at 9–10; Pls.' 56.1 ¶¶ 13–14; Oral Arg., at 4:50–4:54.) Consequently, plaintiffs never reckon with the reasoning in *Gleason* and are not able to define themselves as a class beyond "the group of victims of the tortious action." *Bray*, 506 U.S. at 269. For instance, they point to no evidence in the record from which a rational jury could conclude that defendants discriminated against plaintiffs simply because they were part of the Pattersquash Creek Civil Association, rather than because they stood in opposition to defendants on a political and economic issue in the community. The focus on defendants' allegedly unlawful activities thus misses the mark.[9] Accordingly, the Court grants summary judgment to defendants, because the alleged class does not qualify as a protected class under § 1985 and *Gleason*. *See, e.g.*, *Arteta*, 141 F. App'x at 8 (affirming dismissal of § 1985(3) claim where plaintiffs did not allege that defendants conspired to discriminate against them because of their political party affiliation but rather because they supported one of the defendants' political opponents in an election); *Fotopolous*, 2014 WL 1315241, at *18 (concluding that plaintiff was not part of protected class for purposes of § 1985 liability where he argued that he was a member of a protected class because he was a government employee who refused to associate with the powerful political group in the fire district structure); *Citizens Accord, Inc. v. Town of Rochester*, No. 98-CV-0715, 2000 WL 504132, at *9 (N.D.N.Y. Apr. 18, 2000) (dismissing § 1985(3) claim on grounds that entity and its members were not political organization within purview of *Keating* and, alternatively, there was no evidence of actions directed solely at plaintiff entity or its members on account of their affiliation with the entity).

Second, the claim also fails because

---

[9] The evidence supports this conclusion regardless of whether a rational jury credits defendants' justification for the nonrenewals (*see* Defs.' 56.1 ¶¶ 6–8 (attributing nonrenewals to plaintiffs' behavior and actions in favor of incorporation)) or plaintiffs' (*see* Pls.' 56.1 ¶¶ 13–14 (stating that no reason was given for nonrenewals but indicating that actions in favor of incorporation influenced decision)). For instance, Frasco feels his membership was not renewed because he spoke out against the use of membership fees to oppose incorporation, and his support for the incorporation of the Village of Mastic Beach. (Frasco Dep., at 35:6–16.) Thus, Frasco's own testimony indicates that his actions, not any class status, precipitated defendants' actions.

7

§ 1985(3) does not apply to the alleged conspiracy. Section 1985(3) does not apply to "private conspiracies that are aimed at a right that is by definition a right only against state interference, but applies only to such conspiracies that are aimed at interfering with rights . . . protected against private, as well as official, encroachment." *Bray*, 506 U.S. at 278 (citing *Carpenters*, 463 U.S. at 833) (internal quotation marks omitted) (recognizing only the Thirteenth Amendment rights of interstate travel and freedom from involuntary servitude); *see Poles*, 2010 WL 1992544, at *2 (citing *Bray*, 506 U.S. at 278); *see also Brown v. Philip Morris Inc.*, 250 F.3d 789, 805 (3d Cir. 2001) (same); *Massaccoli v. Merit Mountainside LLC*, Civil Action No. 12-2168, 2012 WL 6697439, at *6 (D.N.J. Dec. 20, 2012) (same). "'When the asserted constitutional deprivation is based upon a right guaranteed against government interference—for example, rights secured by the Fourteenth Amendment—plaintiffs must demonstrate some state involvement.'" *Poles*, 2010 WL 1992544, at *2 (quoting *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir. 1989)); *see also Bray*, 506 U.S. at 278 (noting that "the other elements of [the] more general rights" of privacy or of Fourteenth Amendment liberty "are obviously *not* protected against private infringement" (emphasis in original)).

Here, plaintiffs do not identify any deprivation of a right protected from private encroachment. Instead, they claim defendants violated a purported fundamental right to contract and the right to use and enjoy waterfront property, both in violation of the Fourteenth Amendment. Plaintiffs, however, have not shown any state action, which is required for a Fourteenth Amendment-based § 1985(3) conspiracy.[10]

---

[10] Plaintiffs' claim fails even if construed more liberally. It is quite obvious that defendants' conduct does not implicate the right to be free from involuntary servitude. Plaintiffs also cite to no precedent establishing a fundamental right to contract, much less that it is protected against private encroachment under § 1985(3). *See, e.g.*, *Brown v. Philip Morris Inc.*, 250 F.3d 789, 805 (3d Cir. 2001) (holding alleged deprivation of property and contract rights cannot be vindicated under § 1985(3)); *Home Quest Mortg. LLC v. Am. Family Mut. Ins. Co.*, 340 F. Supp. 2d 1177, 1189 (D. Kan. 2004) ("Construing the allegations in the complaint in the light most favorable to plaintiffs, as the court must at this procedural juncture, it appears that plaintiffs are alleging an unconstitutional deprivation of property and contract rights. The Supreme Court has never held that any such rights are protected against private action and, accordingly, plaintiffs have failed to allege any set of facts that would entitle them to relief under § 1985(3)."); *cf. Local 342, Long Island Public Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Town of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994) (stating that "simple state-law contractual rights, without more," are not protected by the substantive due process clause).

The Court also cannot conclude that defendants infringed upon the constitutional right to travel, which the Second Circuit holds includes the right to travel freely within a state. *See Spencer v. Casavilla*, 803 F.2d 171, 174 (2d Cir. 1990) (citing *King v. New Rochelle Mun. Housing Auth.*, 442 F.2d 646 (2d Cir. 1971)). The denial of the "right to use and enjoy waterfront property," in itself, does not implicate the right to travel. There also is no evidence that defendants acted "for the purpose of depriving" plaintiffs of this right. *Hollman*, 2011 WL 280927, at *11. Moreover, here, the right to access the property (and the adjacent waterways) stems from the fact of membership in the MBPOA. Plaintiffs point to no evidence supporting a reasonable inference that these were the only waterways accessible to them, or that they could not travel throughout New York or to other states absent access to the property. They also cite to no authority (and the Court has not found any) holding that a private entity that chooses to exclude individuals from access to its property necessarily violates the constitutional right to travel (or, relatedly, that such an entity must grant individuals access to that property). *See, e.g.*, *Williams v. Town of Greenburgh*, 535 F.3d 71, 75–76 (2d Cir. 2008) ("While the parameters of [the right to travel] have not been sharply defined by our Court, it is clear that the right protects *movement between places* and has no bearing on *access* to a particular place. . . . [I]t

Accordingly, the Court grants summary judgment to defendants on this basis, too.[11]

## IV. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 29, 2014
      Central Islip, NY

\* \* \*

Plaintiffs are represented by Robert C. Jacovetti, Law Office of Robert Jacovetti, P.C., 194 Old Country Road, Mineola, NY 11501. Defendants are represented by Patrick F. Palladino of Milber, Makris, Plousadis & Seiden, LLP, 1000 Woodbury Road, Suite 402, Woodbury, NY 11797.

---

would distort the right to free travel beyond recognition to construe is providing a substantive right to cross a *particular* parcel of land, enter a *chosen* dwelling, or gain admittance to a *specific* government building." (emphasis in original)) (holding that municipality's decision to limit access to its facilities did not interfere with plaintiff's right to free movement); *cf. Saenz v. Roe*, 526 U.S. 489, 500 (1999) ("The 'right to travel' . . . embraces at least three different components. It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.").

[11] The Court therefore does not address defendants' other arguments in favor of summary judgment, and denies plaintiffs' spoliation motion as moot. In any event, to the extent plaintiffs request spoliation sanctions beyond an adverse jury instruction, such as "punitive" or monetary damages, there have failed to demonstrate any basis for such sanctions. For example, there is no evidence that defendants produced the various versions of the membership lists in bad faith, or that plaintiffs were prejudiced as a result. This especially is true because it is undisputed that plaintiffs were members of the MBPOA before 2011—the fact plaintiffs sought to establish through the lists.